UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

JEANNETTE CAMAYD, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

UNITED AUTO CREDIT CORPORATION

    Defendant.

_____/

CASE NO.:
_____

CLASS ACTION
DEMAND FOR JURY TRIAL

## CLASS ACTION COMPLAINT

1. Plaintiff Jeannette Camayd brings this action for damages, and other legal and equitable remedies, resulting from the illegal actions of United Auto Credit Corporation ("UAC") in contacting Plaintiff on her cellular telephone without her prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

2. "Consumer complaints about abuses of telephone technology– for example, computerized calls to private homes – prompted Congress to pass the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 *et seq.* Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls." *Mims v.*

1

*Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744, 181 L.Ed.2d 881 (2012). (internal citations omitted).

3.      "Robocalls" are the top consumer complaint in America. In 2016, there were nearly four million complaints reported to the Federal Communication Commission and Federal Trade Commission concerning robocalls.[1] In 2015 and 2014 the robocall complaints reached 2,636,477 and 1,949,603, respectively.[2] It is important to recognize these numbers account for only the individuals who complained to these agencies. The number of people that have been victimized by robocalling abuse could be close to 100,000,000 in the last 3 years.

4.      The TCPA was enacted to prevent companies like UACC from invading American citizens' privacy and prevent illegal robocalls.

5.      Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and

---

[1] https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2016/dnc_data_book_fy_2016_post.pdf., https://opendata.fcc.gov/Consumer-and-Government-Affairs/Consumer-Complaints-Data-Unwanted-Calls/vakf-fz8e (3,857,627 complaints to the FCC and FTC regarding robocalls)(last visited September 26, 2017).
[2] https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2015/dncdatabookfy2015.pdf.; https://opendata.fcc.gov/Consumer-and-Government-Affairs/Consumer-Complaints-Data-Unwanted-Calls/vakf-fz8e; https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf., https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2014/dncdatabookfy2014.pdf

privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

6. According to findings by the Federal Communication Commission ("FCC")—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

7. UAC has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies these calls, but also because consumers frequently have to pay their cell phone service providers for the receipt of such calls and such calls are an intrusion upon seclusion, diminish cellular battery life, and waste data storage capacity.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this class action lawsuit under 28 U.S.C. §1331 and 47 U.S.C. §227. Venue in this District is proper because UAC maintains conducts business within this District and Plaintiff received the unlawful robocalls from UAC within this District.

## PARTIES

9. Plaintiff, Jeannette Camayd is a natural person, and citizen of the State of Florida, residing in Miami, Florida.

10. Defendant, UAC, is a California based non-prime automotive lender conducting business across the country. UAC will be served through its registered agent for service of process.

## THE TELEPHONE CONSUMER PROTECTION ACT

11. In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. §227 (TCPA), in response to a growing number of consumer complaints regarding certain telemarketing practices.

12. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of §227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also

recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

14. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.

15. The TCPA prohibits the use of any "automatic telephone dialing systems" ("ATDS") to call cellular telephones. It also prohibits the use of artificial or prerecorded messages.

16. ATDS means any equipment that has the "capacity to dial numbers without human intervention." *Griffith v. Consumer Portfolio Serv., Inc.*, 2011 WL 3609012 (N.D.Ill. Aug. 16, 2011) (emphasis original).

## **FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF**

17. Plaintiff's cellular telephone number at all relevant times was XXX-XXX-0323 and was assigned to a cellular telephone service as specified in 47 U.S.C. §227(b)(1)(A)(iii).

18. At all times relevant to this complaint, Plaintiff was and is a "person" as defined by the TCPA 47 U.S.C. §153(39).

19. Plaintiff never applied for credit with UAC, does not have an account with UAC and never provided UAC consent to use its automatic dialing equipment to call her.

20. Yet, beginning in or around October, 2016, UAC began repeatedly calling Plaintiff on her cellular telephone in an attempt to reach her father, Emilio Camayd for whom, Plaintiff was apparently listed as a credit reference on the loan application.

21. UAC was not calling Plaintiff as a credit reference, but instead calling to collect a debt for payments it alleged were past due.

22. Plaintiff repeatedly told UAC to stop calling her, but the calls continued.

23. Plaintiff did not provide her cellular telephone number to UAC, nor did she provide authorization for UAC to contact her to collect purported debts of Emilio Camayd.

24. UAC continued to place calls to Plaintiff's cellular telephone number using an ATDS.

25. Defendant placed calls to Plaintiff's cellular telephone on at least five occasions in October 2016.

26. It is UAC's business practice to call the telephone numbers of references in attempts to collect debts even though it has no consent to place such calls.

27. UAC knew that it did not have authorization to call Plaintiff on Plaintiff's cellular telephone number using an ATDS since she was only listed as a reference for Emilio Camayd and Plaintiff instructed UAC to stop calling her.

28. When Plaintiff answered the calls from UAC, she heard a pause and a click prior to a live operator joining the line, which is indicia of an ATDS.

29. None of the calls that UAC placed to Plaintiff's cellular telephone number constituted emergency calls as defined by the TCPA.

## CLASS ACTION ALLEGATIONS

30. This action is brought on behalf of the following Class and Sub-Class:

The Class:

(1) All persons in the United States (2) to whose cellular telephone number (3) UAC placed a non-emergency telephone call (4) using an automatic telephone dialing system or an artificial or prerecorded voice (5) within 4 years of the complaint (6) where UAC did not have express consent to call said cellular telephone number.

The "reference" Sub-Class:

(1) All persons in the United States who were listed as a reference (2) to whose cellular telephone number (3) UAC placed a non-emergency telephone call (4) using an automatic telephone dialing system or an artificial or prerecorded voice (5) within 4 years of the complaint (6) to call said cellular telephone number.

31. Excluded from the Class are Defendant, its legal representatives, assigns, and successors, and any entity in which the Defendant has a controlling interest. Also excluded from the Class is the Judge to whom this case is assigned, the Judge's

immediate family, and Plaintiff's counsel and their employees. Plaintiff reserves the right to amend the above-stated class definition based upon facts learned in discovery.

32. Plaintiff alleges on information and belief based upon the Defendant's use of telephone dialing systems that the Class and Sub-Class are so numerous that joinder of all members is impracticable. There are more than forty (40) individuals in the Class and Sub-Class as previously defined herein.

33. There are questions of law or fact common to the Class and Sub-Class, which common issues predominate over any issues involving only individual class members. Factual and/or legal issues common to each class member include:

    a. Whether Defendant's conduct is governed by the TCPA?

    b. Whether the telephone calls made by Defendant were placed using an ATDS?

    c. Are the class members entitled to treble damages based upon the willfulness of Defendant's conduct?

    d. Whether Defendant should be enjoined from engaging in such conduct in the future?

34. Plaintiff's claim is typical of those of the members of the Class and Sub-Class. Within the Class and Sub-Class, all claims are based on the same facts and legal theories.

35. Plaintiff will fairly and adequately protect the interests of the Class and Sub-Class. She has retained counsel experienced in handling actions involving unlawful practices under the TCPA and class actions. Neither Plaintiff nor her counsel has any interest that might cause them not to vigorously pursue this action.

36. Certification of each Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

    a. The questions of law or fact common to the members of the Class and Sub-Class predominate over any questions affecting individual members.

    b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

37. Certification of the Class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that Defendant has acted on grounds generally applicable to the Class and Sub-Class, thereby making final injunctive relief appropriate with respect to the Class and Sub-Class as a whole.

38. Plaintiff requests that the Class and Sub-Class be certified under Rule 23(b)(3) for monetary damages, and pursuant to Rule 23(b)(2) for injunctive relief.

## **COUNT I: NEGLIGENT VIOLATIONS OF THE TCPA**

39. Plaintiff incorporates the above factual allegations.

40. Defendant placed non-emergency telephone calls to Plaintiff and the members of the Class and Sub-Class using an automatic telephone dialing system or device that has the capacity to store or produce telephone numbers to be called using a random or sequential number generator.

41. The calls were made without the prior express consent of the parties.

42. The aforesaid calls violate the TCPA, 47 U.S.C. §227(b)(1)(A)(iii).

43. WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and in favor of the Class and Sub-Class, and against Defendant UAC for:

   a. An order certifying this case to proceed as a class action;
   b. Statutory damages of $500 dollars per call for negligent violations of the TCPA;
   c. An injunction requiring Defendant to cease all communications in violation of the TCPA; and
   d. Such further relief as this Court may deem appropriate.

### COUNT II: WILLFUL VIOLATION OF THE TCPA

44. Plaintiff incorporates the above factual allegations.

45. Defendant placed non-emergency telephone calls to Plaintiff and the members of the Class and Sub-Class using an automatic telephone dialing system or device which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator.

46. The excessive calls were made without the prior express consent of the parties.

47. The aforesaid calls violate the TCPA, 47 U.S.C. §227(b)(1)(A)(iii).

48. WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and in favor of the Class and Sub-Class, and against Defendant UAC for:

    a. An order certifying this case to proceed as a class action;

    b. Statutory damages of up to $1,500 dollars per call for each willful violation of the TCPA;

    c. An injunction requiring Defendant to cease all communications in violation of the TCPA; and

    d. Such further relief as this Court may deem appropriate.

## JURY DEMAND

Plaintiff demands trial by jury.

Respectfully submitted,

/s/ Max Story
Max Story (FBN 0527238)
Max Story PA
Austin Griffin (FBN 117740)
328 2nd Avenue North
Jacksonville Beach, Florida 32250
(904) 372-4109
(904) 758-5333
max@storylawgroup.com

Keith J. Keogh (FBN 126335)
Amy L. Wells *pro hac vice* – to be filed
Keogh Law, Ltd.
55 West Monroe Street, Suite 3390
Chicago, Illinois 60603
(312) 726-1092
(312) 726-1093 (fax)
Keith@KeoghLaw.com
AWells@KeoghLaw.com

*Counsel for Plaintiff*
